IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KEFFER DEVELOPMENT SERVICES, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> HARTFORD CASUALTY INSURANCE COMPANY, <br><br> *Defendant.* | Civil Action No. 2:25-cv-1114 <br><br> Hon. William S. Stickman IV |

## <u>MEMORANDUM OPINION</u>

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Keffer Development Services, LLC ("Keffer") filed its initial complaint against Defendant Hartford Casualty Insurance Company ("Hartford") due to Hartford's refusal to provide Keffer with coverage in an underlying multi-district litigation ("MDL") "now centralized for the purpose of pretrial proceedings in the Eastern District of Michigan at 2:25-md-03159," an action in which Keffer is named as a defendant ("Weiss Lawsuits"). (ECF No. 1); (ECF No. 29, ¶ 67). Keffer subsequently filed its motion for temporary stay of proceedings pending the resolution of the Weiss Lawsuits, which the Court denied. (ECF No. 19); (ECF Nos. 22 & 23). In response to the Court's decision denying its motion for temporary stay, Keffer requested, and was granted, leave to amend its initial complaint. (ECF Nos. 25 & 26). Keffer filed its first amended complaint in which it seeks a declaratory judgment, asking the Court to declare that "Hartford has a duty to defend and indemnify Keffer" in the Weiss Lawsuits and articulate any "counsel fees associated with this action" and "such other and further relief as the Court deems just and proper" (Count I). (ECF No. 29, ¶ 67). Keffer additionally alleges that Hartford breached the insurance policy it

1

issued to Keffer by denying it coverage and failing to adhere to Hartford's duties to defend and indemnify Keffer pursuant to the terms of the policy (Count II). (*Id.* ¶¶ 70, 79–80). Hartford, in accordance with the Court's January 29, 2026, Order granting Keffer's leave to amend, filed its motion to dismiss Keffer's first amended complaint, reasserting its initial motion to dismiss Keffer's complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 17 & 18) (that which the Court denied as moot (ECF No. 28)) along with a supplement in support thereof. (ECF Nos. 30 & 30-1). For the reasons that follow, the Court will grant Hartford's Reasserted Motion to Dismiss Plaintiff's [First Amended] Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 30).

## I.    FACTUAL BACKGROUND

Keffer is a technology services provider, owning and operating an electronic medical record software, the Athletic Trainer Software ("ATS"). (ECF No. 29, ¶ 15). ATS is a program that athletic trainers use "to store and access electronic health records of athletes, students, and employees" and the software is utilized by a variety of colleges and universities throughout the country. (*Id.* ¶ 16). Hartford is the insurer that issued the general liability insurance policy ("the Policy") to Keffer, which serves as the basis for this dispute. (ECF No. 18, p. 7).

The Policy includes Umbrella Liability Coverage, which remained effective from July 2, 2014, to July 2, 2025. (ECF No. 29, ¶ 7). The Policy contains a Business Liability Coverage Form ("BLCF"), which contains the operative language at issue and obligates Hartford to provide coverage for, and defend Keffer against, "claims alleging 'bodily injury' caused by an 'occurrence' that takes place in the 'coverage territory.'" (*Id.* ¶ 8). The Policy additionally contains both a "Technology Services Extension" endorsement and a "Personal and Advertising Injury Exclusion – Limited" endorsement. (*Id.* ¶¶ 12, 14). The former amends exclusions relating to "bodily injury"

2

and "property damage," while the latter "amends the BLCF to include 'personal and advertising injury' coverage" if certain conditions are met. (*Id*.).

Keffer seeks coverage for the Weiss Lawsuits.

**A.  Underlying MDL – Facts Pertaining to the Weiss Lawsuits**

The Weiss Lawsuits, initially filed in multiple federal courts, were brought against several universities, Keffer, and Matthew Weiss, and were consolidated into an MDL and transferred to the United States District Court for the Eastern District of Michigan.  (*Id.* ¶¶ 20–21).  "The operative complaints in each of the pending [Weiss] Lawsuits have been re-filed at the centralized docket." (ECF No. 33, p. 2).

Plaintiffs in the Weiss Lawsuits ("Weiss Plaintiffs") allege that Weiss, the former University of Michigan Football coach, "wrongfully accessed the personal and health information belonging to dozens of female student athletes whose data was stored in ATS and used that information to obtain access to the students' social media and cloud accounts for the purpose of viewing" their "intimate photos and videos." (ECF No. 18, p. 7).  As to Keffer, the Weiss Plaintiffs allege that it "failed to prevent or detect this data breach by failing to implement reasonable, industry-standard security measures into the ATS software platform.[1]  (*Id*.).

Keffer notes that since the claims brought by the Weiss Plaintiffs in the Weiss Lawsuits "are class actions, they allege damages in a broad and general fashion," but according to Keffer, those claims indicate that the "[Weiss] Plaintiffs' safety was disregarded and that the [Weiss]

---

[1] The claims brought against Keffer include those for Violation of the Computer Fraud and Abuse Act pursuant to 18 U.S.C. § 1030, Violation of Title IX pursuant to 20 U.S.C. § 1681(A) *et seq.*, Violations of the Stored Communications Act, Violations of the MCL § 600.2919a, and Violation of the Michigan Identity Theft Protection Act at MCL 445.61 *et seq*.  (ECF No. 29, ¶ 27).

Plaintiffs were humiliated and distressed." (*Id.* ¶¶ 28). Keffer further asserts that "[m]any of the alleged damages may include damages for physical bodily injury suffered." (*Id.* ¶ 29).

Keffer asserts, and emphasizes, that "there is an ongoing criminal investigation with respect to the alleged events giving rise to the underlying [Weiss] Lawsuits, where new facts are coming to light," thus, "[i]t is impossible to know, at this time, the full extent of the injuries that could be alleged in the underlying [Weiss] Lawsuits." (ECF No. 33, p. 3).

Further, Keffer alleges that the Weiss Plaintiffs assert that "Weiss gained access to Keffer's ATS system and used the passwords obtained from it to mine account users' information, images and videos" which constituted an "intrusion by Weiss into Keffer's servers where student-athlete account users occupied space" and thus triggers coverage for "personal and advertising injury" under the Policy. (ECF No. 29, ¶¶ 41, 43).

## II.    LEGAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact.  *Twombly*, 550 U.S. at 555.  Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief.  *Id.* at 682.  The complaint must support the inference with facts to plausibly justify that inferential leap.  *Id.*

### III.   ANALYSIS

To determine an insurer's obligations pursuant to an insurance policy, Pennsylvania law provides that courts must construe the insurance policy "most strongly against the insurer"; however, "it is a necessary prerequisite to recovery upon a policy for an insured to show a claim within the coverage provided by the policy." *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966) (quoting *Warner v. Emps. Liab. Assurance Corp.*, 133 A.2d 231, 233 (Pa. 1957)).[2] For purposes of establishing whether an insurer has a duty to defend and indemnify, the Court looks first to the duty to defend. *Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pitt*, 83 A.3d 418, 421 (Pa. Super. 2013) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 n. 7 (Pa. 2006) ("*Kvaerner*")).  "The duty to defend is a distinct obligation, different and

---

[2] The parties do not dispute whether Pennsylvania law should govern this controversy. As Hartford states in its motion to dismiss, "the Policy was issued and delivered to Keffer in Pennsylvania, and thus Pennsylvania governs this action." (ECF No. 18, p. 15).  Moreover, the Policy "includes Pennsylvania amendatory endorsements and notices." (*Id.* at 11).  The Court will accordingly apply Pennsylvania law to this dispute.

broader than the duty to indemnify," and because it is broader, "there is no duty to indemnify if there is no duty to defend." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225–26 (3d Cir. 2005) (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 746 n.1 (Pa. 1999)).

## A. The Weiss Lawsuits do not trigger Hartford's Duty to Defend or Indemnify for "Bodily Injury" or "Personal and Advertising Injury."

When tasked with establishing an insurer's duty to defend its insured, Pennsylvania law instructs that a court "make[] its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (citing *Sikirica*, 416 F.3d at 226). The law of this state also "adheres to the 'four corners' rule … under which an insurer's potential duty to defend is 'determined *solely* by the allegations of the complaint in the [underlying] action.'" *Id.* (emphasis in original) (quoting *Kvaerner*, 908 A.2d at 896). As the Supreme Court of Pennsylvania explained, "if the factual allegations of the complaint on its face encompass an injury that is *actually or potentially* within the scope of the policy," the insurer has an obligation to defend the insured. *American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) (emphasis added) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). In other words, "[a]s long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend." *Id.* (quoting *Casper v. Am. Guarantee & Liab. Ins. Co.*, 184 A.2d 247, 248 (Pa. 1962)).

Keffer asserts two theories that it believes entitle it to coverage under the Policy: (1) that the Weiss Plaintiffs' underlying complaints allege damages, many of which "may include damages for 'physical bodily injury suffered,'" thus triggering the Policy's "bodily injury coverage"; and (2) the underlying complaints contain allegations that trigger the Policy's "personal and advertising injury" coverage. (ECF No. 29).

6

*1. Keffer fails to state a claim that the underlying lawsuits allege "bodily injury" triggering coverage under the terms of the Policy.*

For purposes of interpreting insurance contracts, Pennsylvania law requires courts "to ascertain the intent of the parties as manifested by the language of the written instrument" by "read[ing] the policy as a whole and constru[ing] [it] according to the plain meaning of its terms." *Ramara, Inc.*, 814 F.3d at 676 (first quoting *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011); and then quoting *C.H. Heist Caribe Corp. v. Am. Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir. 1981)). If there exists any ambiguity in the insurance contract—where the terms are vulnerable to more than one interpretation—Pennsylvania courts direct the insurance policy to be "construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." *Id.* (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)).

The Policy, under the BLCF, states:

Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance does not apply …
b. This insurance applies:
    (1) to 'bodily injury' and 'property damage' only if:
        (a) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';
        (b) The 'bodily injury' or 'property damage' occurs during the policy period…

(ECF No. 29-1, p. 58). The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 79). "Coverage territory" is defined as "(1) The United States of America (including its territories and possessions); (2) Puerto Rico; and (3) Canada." (*Id.* at 54).

7

Keffer contends that the Weiss Plaintiffs, in the underlying Weiss Lawsuits, are seeking "to recover for damages stemming from 'bodily injury' as the result of a digital intrusion of privacy, namely the breach of students' intimate and private images and videos, which constitutes an 'occurrence' [that] has occurred within the 'coverage territory.'" (ECF No. 29, ¶ 60). Hartford does not dispute that the Weiss Lawsuits allege an "occurrence" within the "coverage territory" for purposes of asserting a potential "bodily injury" that may trigger coverage. Hartford, however, argues that "the Weiss Lawsuits do not trigger the Policy's specified coverage for 'bodily injury' because they allege only mental and emotional damages, not physical harm" and thus do not fall under the Policy's definition of "bodily injury." (ECF No. 18, p. 7).

As provided by the Policy:

'Bodily injury' means physical:
(a) Injury;
(b) Sickness; or
(c) Disease
   sustained by a person and, if arising out of the above, mental anguish or death at any time.

(ECF No. 29-1, p. 77). Pursuant to Pennsylvania law, the Court must look to the underlying complaint to determine if the plaintiff "avers facts that would support a recovery covered by the policy" and if that complaint "makes at least one allegation that falls within the scope of the policy's coverage," the insurer's duty to defend is triggered. *TELA Bio, Inc. v. Fed. Ins. Co.*, 313 F. Supp. 3d 646, 655 (E.D. Pa. 2018) (first quoting *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997); and then quoting *Bealer v. Nationwide Mut. Ins. Co.*, No. 16-cv-3181, 2016 WL 6833014, at *3 (E.D. Pa. Nov. 16, 2016)). Whether coverage has been triggered is dependent upon the factual allegations asserted in the underlying complaint rather than "[t]he particular cause of action that [the underlying] complaint pleads." *Id.* (internal citations omitted)

(quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999); *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)).

In its brief opposing Hartford's motion to dismiss, Keffer cites to several complaints filed by the Weiss Plaintiffs that it believes state (or potentially allege) claims that qualify as "bodily injury" under the Policy.  Keffer quotes the Weiss Plaintiff from Massachusetts who alleges "After receiving notice from the federal government … Jane Doe felt deeply violated, deeply disturbed, humiliated, embarrassed, and extremely emotionally distressed; and is experiencing ***physical manifestations of the stress and anxiety caused by this egregious violation of her privacy***."[3] (ECF No. 33, p. 6) (emphasis in original) (quoting ECF No. 33-4, ¶ 79).  In light of the assertions Keffer cites for support, it further claims that "Plaintiffs in the [Weiss] Lawsuits … have suffered physical manifestations of their emotional distress, which will likely be pled more specifically in amended iterations of the Complaints, … or come further to light as discovery proceeds."[4]  (*Id.* at 7).  Moreover, Keffer cites to *W. Bend Mut. Ins. Co. v. CPT Next Gen., Inc.*, 728 F. Supp. 3d 609 (E.D. Mich. 2024) to support its assertion that a plaintiff that suffers from physical manifestations of emotional distress may be sufficient to trigger coverage for "bodily injury."  The Court does not find Keffer's use of *W. Bend* to be persuasive.

It is significant that in *W. Bend* the Eastern District Court of Michigan applied Michigan law, rather than Pennsylvania law, to analyze the coverage claims.  Under Michigan law, showing

---

[3] Keffer additionally introduces excerpts from two other Weiss Plaintiffs' complaints.  Both use substantially the same language cited above.  *See* ECF No. 33, p. 6.

[4] The Court notes Keffer's assertion that "the underlying Lawsuits relevant to the instant matter are still in their infancy. The pleadings have not closed, and discovery has not begun." (ECF No. 33, p. 7).  However, the Court has already denied Keffer's motion to stay proceedings pending development of the Weiss Lawsuits.  The Court, in accordance with Pennsylvania law, need not look to anything more than the underlying complaint filed by the Weiss Plaintiffs to determine if they trigger coverage under the terms of the Policy.

"some physical manifestation of mental anguish and humiliation" qualifies as "bodily injury" to trigger an insurer's duty to defend. *W. Bend*, 728 F. Supp. 3d at 620; *see also Farm Bureau Mut. Ins. Co. of Mich. v. Hoag*, 356 N.W.2d 630, 633 (Mich. Ct. App. 1984) ("As a minimum, we would require alleged physical manifestation of [underlying plaintiff's] mental suffering to require [insurer] to defend [insured] in federal court."). Conversely, Pennsylvania law, which is applicable to the current controversy, takes an adverse position.

As explained by several Pennsylvania courts, "[i]t is clear that the common and approved usage of 'bodily' injury connotes a physical, and not mental injury." *Jackson v. Travelers Ins. Co.*, 606 A.2d 1384, 1386–87 (Pa. Super. 1992); *see also Steadfast Ins. Co. v. Tomei*, 474 WDA 2015, 2016 WL 2989982, at *4 (Pa. Super. 2016) ("The Pennsylvania Courts have soundly rejected the contention that policy definitions of injury or bodily injury encompass mental or emotional harm."). Even more, Pennsylvania courts have "also determined that physical symptoms that result from mental and emotional harm do not constitute 'bodily injury' for purposes of insurance law."[5] *Legion Indem. Co. v. Carestate Ambulance, Inc.*, 152 F. Supp. 2d 707, 719 (E.D. Pa. 2001) (citing *Zerr v. Erie Ins. Exch.*, 667 A.2d 237 (Pa. Super. 1995)).

---

[5] The Superior Court of Pennsylvania did find that a policy defining "'bodily injury' as 'bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease" creates four distinct types of "bodily injury," thus a disease—specifically post-traumatic stress disorder—was covered under the policy in that instance. *Glikman v. Progressive Cas. Ins. Co.*, 917 A.2d 872, 873 (Pa. Super. 2007); *but see Nationwide Mut. Ins. Co. v.* Garzone, No. 07-CV-4746, 2009 WL 2996468, at *16–17 (E.D. Pa. Sept. 17, 2009) (distinguishing *Glikman* from the facts at issue where the "[u]nderlying [p]laintiffs have not identified any underlying complaint which alleges that an underlying plaintiff developed post-traumatic stress disorder or a similar condition as a result of the [underlying defendant's] conduct." Further finding that the insurer "in no way admitted that the emotional harms alleged … are a 'disease,' as the insurer did in *Glikman*."). Like the *Nationwide* policy, the Policy here explicitly provides a precondition in the "bodily injury" definition that the qualifying "injury," "sickness," or "disease" must be one that is "physical." And if one of those physical bodily injuries has been suffered, *any mental anguish that results* will be covered. (ECF No. 29-1, p. 77). There are no facts or allegations that a disease has been suffered by any of the Weiss Plaintiffs.

Keffer asserts that Hartford "does not argue that there is no coverage if 'bodily injury' is alleged, [it] only argues that 'bodily injury' is not alleged. This argument is easily defeated by the allegations cited herein and in the Proposed Second Amended Complaint [("SAC")] attached hereto as Exhibit '5.'" (ECF No. 33, p. 8). The Court finds that neither the Weiss Plaintiffs' allegations cited in Keffer's brief opposing Hartford's motion to dismiss nor the Weiss Plaintiffs' SAC[6] reinforce Keffer's contention that "bodily injury" is alleged in the underlying Weiss Lawsuits.

The Court has already discussed the allegations made by separate Weiss Plaintiffs who claim that they suffered "physical manifestations of the stress and anxiety caused by" violations of their privacy. Those assertions remain insufficient to trigger "bodily injury" coverage under Pennsylvania Law. (ECF No. 33, p. 6); *see Evans v. Travelers Ins. Co.*, 226 A.3d 96, 102 (Pa. Super. 2019) (citing *Zerr*, 667 A.2d at 240) (reiterating that under Pennsylvania law, a "claim for coverage [that] was based solely on emotional injury without any accompanying physical injury" cannot be covered under a "bodily injury" provision of an insurance policy).

------

[6] Although Keffer has not updated the Court on the status of the Weiss Plaintiffs' Motion for Leave to File Second Amended Complaint, pursuant to Fed. R. Evid. 201, courts within the Third Circuit are permitted to take judicial notice of filings in the underlying lawsuit's docket at the motion to dismiss stage. Courts may take notice in the absence of any request. *Smierciak v. City of Pitt. Police. Dept.*, No. 2:18-CV-00734, 2018 WL 6790312, at *1 n. 3 (W.D. Pa. Dec. 26, 2018) (citing *In re Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005)). The Eastern District of Michigan granted the Weiss Plaintiffs' motion to file their second amended complaint, which the Court will refer to as the second amended complaint ("SAC") (rather than the proposed SAC, as Keffer calls it throughout its brief). The SAC can be found at 2:25-md-03159, ECF No. 101. All relevant language is identical to the proposed amended complaint attached to Keffer's brief at ECF No. 33-5. For purposes of consistency, the Court will continue to cite to the version attached to ECF No. 33-5.

As to Keffer's reliance on the Weiss Plaintiffs' SAC, the Court finds that it still lacks facts that may potentially trigger "bodily injury" coverage under the Policy. Initially, the Court notes the Weiss Plaintiffs' assertion that "[t]he proposed revised [SAC] advances the litigation efficiently by incorporating detailed factual allegations that have emerged through ongoing proceedings and investigation and further specify the theories of liability." (ECF No. 33-5, p. 8).

Despite their contention, the SAC incorporates no additional facts that allege, or even potentially allege, "bodily injury" as is necessary for purposes of determining Hartford's coverage obligations. Instead, the Weiss Plaintiffs use the same language and broad allegations to describe their injuries. For example, the Weiss Plaintiffs assert that "Weiss's actions have caused his victims severe emotional distress in the form of humiliation, embarrassment, loss of experience, loss of dignity and a profound sense of vulnerability that accompanies the exposure of deeply private matters," (*Id.* ¶ 434) and "[Weiss] Plaintiffs and Class Members have also suffered and continue to suffer severe emotional distress, including humiliation, embarrassment, loss of dignity and the profound sense of vulnerability that accompanies the exposure of deeply private matters." (*Id.* ¶ 519).[7]

The Court must look to the SAC as the operative complaint. *See Garrett v. Wexford Health,* 938 F.3d 69, 82 (3d Cir. 2019) (citing *Palakovic v. Wetzel,* 854 F.3d 209, 220 (3d Cir. 2017)) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a

---

[7] The same language is used throughout the proposed Second Amended Complaint at ECF No. 33-5, ¶¶ 520, 538, 539, 556, 561, 562, 583, 584, 605, 606, 628, 629. Keffer refers to the Weiss Plaintiffs' "proposed Second Amended Complaint" throughout its pleadings. (ECF No. 33) (citing ECF No. 33-5). That proposed Second Amended Complaint was adopted by the Eastern District of Michigan for the Weiss Lawsuits. The Court, taking notice of the filings in the Eastern District of Michigan's docket, will accordingly refer to what Keffer calls the "proposed Second Amended Complaint" as the Second Amended Complaint ("SAC"), but will cite to the exhibit attached to Keffer's brief at ECF 33-5 for purposes of consistency. The adopted SAC can be found in the Eastern District of Michigan's court docket at 2:25-md-03159, ECF No. 101.

nullity. Thus, the most recently filed amended complaint becomes the operative pleading.").  As such, it is significant that the SAC does not include allegations that the Weiss Plaintiffs suffer "physical manifestations of emotional distress" beyond asserting conclusory statements that the Weiss Plaintiffs suffered from "humiliation," "loss of dignity," and the like.  *See* (ECF No. 33, p. 6).  In fact, the only assertion in the SAC that speaks to physical injury is the claim that "[t]he decisions and actions to expose [Weiss] Plaintiffs['] PII [(personal identifying information and images)] and PHI [(private health information)] to Weiss constituted affirmative acts that caused and/or increased the risk of harm, as well as *physical* and emotional injury, to [Weiss] Plaintiffs and Class Members." (*Id.* ¶ 712) (emphasis added).

Keffer acknowledges that "at this stage in the underlying Lawsuits, damages are pled in broad and non-specific terms," but argues that the "claims for damages can be amended up until the time of trial" and "it is not implausible that these claims for damages would be amended to include 'bodily injury.'" (ECF No. 33, p. 9).  Keffer's argument is unpersuasive.  As explained by a United States District Court for the Middle District of Pennsylvania:

> [T]he general rule of civil procedure that complaints may be amended cannot be manipulated to essentially require insurers to defend every complaint ever filed based on the mere possibility that at some point in the future, the underlying plaintiff may amend his or her complaint to allege a potentially covered claim. Such a rule would be highly burdensome to insurers, and would quite likely drive up the costs of insurance for policyholders.

*State Farm Fire & Cas. Co. v. Scalia*, No. 1:14-cv-00049, 2014 WL 6982926, at *7 (M.D. Pa. Dec. 9, 2014).

Although Pennsylvania courts have held that "insurers owe a duty to defend in cases where 'amendment or variance of proof' might bring a complaint within the coverage of an insurance policy," the Supreme Court of Pennsylvania explained that if "the complaint against the insurance company, incorporating by reference, as it did, the patron's complaint, revealed that the cause of

action was based upon facts which did not come within the scope of the policy" then neither "amendment or variance could possibly establish a cause of action which would be cognizable under the insurance contract ... ." *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488–89 (1959) (citing *Wilson v. Md. Cas. Co.*, 105 A.2d 304, 306 (1954)).

The Weiss Plaintiffs have not pled facts that establish "bodily injury" in their underlying complaint, and the Court finds that it would be impossible for the Weiss Plaintiffs to amend their complaint in such a way that it could, potentially, contain sufficient facts to trigger coverage for "bodily injury" under the Policy.  It has been established that "emotional harms" such as "humiliation, distress, and embarrassment" do not qualify as "bodily injury" under Pennsylvania law. *See Steadfast Ins. Co.*, 2016 WL 2989982, at *5. And, although Keffer contends that "[s]ome of the students may have experienced physical bodily injury from discovering that their most intimate images and moments have been taken from them and exposed, particularly where it is specifically alleged that Weiss' conduct rose to the level of sexual harassment, assault and/or stalking," those allegations are not supported by any facts that demonstrate, or have the potential to demonstrate, "bodily injury." *See TELA Bio, Inc.*, 313 F. Supp. 3d at 655 (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (1999) (explaining that, under Pennsylvania law, "[t]he particular cause of action that [the underlying] complaint pleads is not determinative of whether coverage has been triggered," rather, the court must focus on the factual allegations in the underlying complaint to make the determination).

Keffer contends that, upon liberally construing the facts and accepting the Weiss Plaintiffs' allegations as true, the Court should find that the claims potentially come within the scope of coverage for "bodily injury."  The Court disagrees.  There is no indication that any of the Weiss Plaintiffs suffered a physical injury, as is required to trigger coverage under the Policy.  Even if

14

discovery and a more developed record reveal that Weiss's actions caused mental anguish that manifested through physical symptoms, it cannot qualify as a physical injury per the definition in the Policy. *See Allstate Prop. & Cas. Ins. Co. v. Winslow*, 66 F. Supp. 3d 661, 673 (W.D. Pa. 2014) (where a policy "defines the term 'bodily injury' as physical harm and any sickness, illness, or disease that *results from* that physical harm, allegations that a victim suffered some condition as the result of mental or emotional distress do not trigger coverage," thus "a sickness or disease that results from a mental injury cannot qualify, because a mental injury cannot satisfy the prerequisite that a physical injury be suffered first."). The underlying operative complaint is devoid of facts that show any physical impact on the Weiss Plaintiffs, particularly where the injuries alleged arose from Weiss's access to, and misuse of, the ATS system. Weiss did not have any physical contact with any of the Weiss Plaintiffs; instead, his alleged injury-causing conduct was directed towards the ATS electronic software, where the data possessing the Weiss Plaintiffs' private information was located. (ECF No. 33-1).

The Court holds that the underlying SAC does not, and cannot possibly, allege facts demonstrating that any of the Weiss Plaintiffs' injuries qualify as a "bodily injury" triggering coverage and Hartford's duty to defend.

In accordance with the Court's finding that Hartford does not have a duty to defend Keffer in the Weiss Lawsuits, the Court finds that Hartford does not have a duty to indemnify Keffer, either. Pennsylvania courts, along with courts in this circuit, have explicitly held that since "the duty to defend is broader than the duty to indemnify," a finding that an insurer does not have a duty to defend "will also preclude a duty to indemnify." *Kvaerner*, 908 A.2d at 896 n. 7 (citing *General Accident Ins. Co. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997); *Scopel v. Donegal Mut. Ins.*

*Co.*, 698 A.2d 602, 605 (Pa. Super. 1997)).  Because Hartford does not have a duty to defend Keffer in the Weiss Lawsuits, the Court must find that it does not have a duty to indemnify Keffer.

The Court will grant Hartford's motion to dismiss Keffer's claim that it has a duty to defend and indemnify Keffer under the "bodily injury" provision.

2. *Keffer's claim that the Weiss Lawsuits trigger the personal and advertising injury coverage fails.*

Keffer, in its first amended complaint, re-asserted that Weiss's conduct – "gaining access to students' accounts which were stored on Keffer's servers" at Keffer's property – triggered personal and advertising coverage (under the Personal and Advertising Exclusion – Limited endorsement) since "Weiss is alleged to have made a wrongful entry and/or invasion of the right of private occupancy of a premises ... ."  (ECF No. 29, ¶ 65).  Keffer thus asserts that "Hartford has a duty to defend and indemnify Keffer in the [Weiss Lawsuits]." (*Id.* ¶ 67).  For the reasons that follow, the Court will dismiss Keffer's claim that the Weiss Lawsuits allege facts sufficient to prompt Hartford's obligations to defend and indemnify it for "personal and advertising injury."[8]

The Policy defines "Personal and Advertising Injury," under § B(1)(p) of the BLCF, but further amends the definition, only providing coverage for "personal and advertising injury" resulting from the following offenses:

> (a) False arrest, detention or imprisonment;
> (b) Malicious prosecution; or
> (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor.

---

[8] The Court notes Hartford's argument that "Keffer has waived any assertion that the Weiss Lawsuits are covered by the Policy's 'personal and advertising injury' coverage by failing to respond to the arguments set forth in" its motion to dismiss. (ECF No. 34, p. 5).  Given the circumstances of the record and the possibility that the re-asserted motion to dismiss (further supplemented by Hartford (ECF Nos. 18, 30, 30-1)) caused confusion, the Court will consider Keffer's request for the Court to declare that it is afforded coverage under the "personal and advertising injury" provision of the Policy.

(ECF 29-1, pp. 65, 153). Keffer argues that the Weiss Plaintiffs' claims allege, or have the potential to allege, a "personal and advertising injury" under § B(1)(p)(c) above. Specifically, Keffer asserts that Weiss committed a "wrongful entry into, or invasion of the right of private occupancy of a room … premises that the person occupies, committed by or on behalf of its owner… ." (ECF No. 29, ¶ 45); (citing ECF No. 29-1, p. 153). For support, Keffer explains that "the ATS system occupies Keffer's premises" and "any intrusion into Keffer's ATS system where [Weiss] Plaintiffs' information was stored" would be one that triggers coverage. (*Id.*). Keffer argues that the Weiss Plaintiffs "had an expectation that the space they stored their information at would be private and that the 'premises' where the information was stored would be free from wrongful entry or invasion of the right of private occupancy." (*Id.* ¶ 46).

In its original motion to dismiss Keffer's initial complaint (ECF No. 18) which is reasserted and supplemented in its motion to dismiss Keffer's first amended complaint (ECF No. 30), Hartford argues that "[t]he Weiss Lawsuits cannot trigger the Policy's coverage for 'personal and advertising injury.'" (ECF No. 18, p. 22). For support, Hartford makes two separate arguments: first "[t]he Weiss Lawsuits do not allege 'personal and advertising injury' as defined in the Policy"; and second, "[e]ven if the Weiss Lawsuits did allege 'personal and advertising injury,' coverage would be barred by the Information Disclosure Exclusion."[9] (*Id.* at 22 & 14).

Hartford asserts that the Weiss Plaintiffs' allegations do not trigger coverage under the Policy's "personal and advertising injury" "for either of two independent reasons: (1) [ ] Weiss was not alleged to have entered any 'room, dwelling, or other premises,' wrongfully or otherwise,

---

[9] Hartford refers to the BLCF, Exclusions, at § (B)(p)(15) of the policy, as amended by the BLCF Amendatory Endorsement, § A, as the "Information Disclosure Exclusion."

and (2) [ ] Weiss was not the 'owner, landlord, or lessor' of any purported 'room, dwelling, or other premises' at issue." (*Id.* at 22) (quoting ECF No. 29-1, pp. 79–80).

In accordance with findings made by other courts in this circuit, the Court finds that the phrase "invasion of the right of private occupancy" is ambiguous. *See New Castle Cnty., DE v. Nat'l Union Fire Ins. Co.*, 243 F.3d 744, 756 (3d Cir. 2001); *see also Pellegrino Food Prods. Co., Inc. v. Am. Automobile Ins. Co.*, 655 F. Supp. 2d 569, 579 (W.D. Pa. 2008). Where, as here, a court finds ambiguity in an insurance contract, it shall be resolved in favor of the insured. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 163 (3d Cir. 2011) (citing *McMillan v. State Mut. Life Assur. Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir. 1990)). Keffer's amended complaint contends that the Weiss Plaintiffs have alleged that Weiss "made a wrongful entry and invasion of the right of private occupancy of a premises," the premises being Keffer's property where the ATS system is located. (ECF No. 29. ¶¶ 76–77). Keffer also indicates that the Weiss Plaintiffs "had a right to occupy the server space, which is located on Keffer's premises, and Weiss is alleged to have hacked into those server spaces by utilizing the ATS system owned by Keffer." (*Id.* ¶ 44).

In its motion to dismiss, Hartford argues that "the Weiss Lawsuits do not trigger the Policy's 'personal and advertising injury coverage' because [ ] Weiss's unauthorized access to stored data plainly does not constitute a wrongful entry into or invasion of the right of private occupancy of a room, dwelling, or other premises by an owner, landlord, or lessor." (ECF No. 18, p. 8). According to Hartford, the "ordinary meaning" of the words used in the coverage term implicate a requisite "physical trespass onto real property, not the purely digital intrusion into electronically stored data lacking any spatial element that is alleged here." (*Id.*). The Policy does not define "room," "dwelling," or "other premises." But Keffer does not seem to argue that the ATS system, accessed by Weiss, constituted "premises." Rather, it argues that "the places where

18

the Weiss Plaintiffs' passwords are stored are on a server, which Keffer maintains on site at Keffer Development Services located at 24 Village Park Drive, Grove City, Pennsylvania 16127," and that Weiss's conduct amounted to a "wrongful entry into, or invasion of the right to private occupancy of" that premises and the ATS server stored therein.  (ECF No. 29, ¶¶ 42, 45).

Hartford further contends that Weiss's conduct could not, as a matter of law, "constitute a wrongful entry into or invasion of the right of private occupancy of premises" because "[e]ven if the data accessed by [ ] Weiss is stored on a physical server, the alleged intrusion is not a physical one." (ECF No. 18, p. 23).  For support, Keffer cites to two cases. *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, No. 12-CV-7228, 2015 WL 1456085, at *2 & *9 (E.D. Pa. Mar. 31, 2015); *O'Brien Energy Sys., Inc. v. Am. Emps. Ins. Co.*, 629 A.2d 957, 964 (Pa. Super. 1993).  The Court neither finds *Stevens & Ricci* nor *O'Brien* persuasive for the purpose of requiring an invasion or wrongful entry to be a physical one.

The Supreme Court of the United States has explained that "[i]n the computing context, 'access' references the act of *entering* a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases." *Van Buren v. United States*, 593 U.S. 374, 388 (2021) (emphasis added) (citing 1 Oxford English Dictionary 72 (2d ed. 1989)).  Because the Policy does not include any requirements specifying that either the "invasion" or "entry" must be through physical conduct, or that the specific "premises" must be a physical one, the Court will interpret it in favor of Keffer.  The Court finds that Keffer has, at a minimum, alleged that Weiss entered the ATS system, a server, located on Keffer's premises.

Although the Court agrees with Keffer that Weiss's conduct may qualify as an entry into a "premises," the Court finds that Keffer fails to argue that the Weiss Plaintiffs alleged facts which

19

satisfy the requirement that the wrongful entry or invasion of the right of private occupancy was "committed by or on behalf of its owner, landlord or lessor." (ECF No. 18, p. 23).

Keffer asserts that Weiss committed the wrongful entry or invasion of the right of private occupancy because he "is alleged to have hacked into those server spaces by utilizing the ATS system owned by Keffer." (ECF No. 29, ¶ 44). Keffer maintains that it is the owner of ATS, and seemingly implies that Weiss committed the wrongful entry or invasion "by or on behalf of" Keffer or one of Keffer's landlords or lessors. (*Id.* ¶ 45). The Court notes that the Policy does not provide definitions for "owner," "landlord," or "lessor." Where an insurance policy does not provide a definition for "[w]ords of common usage," the Court will interpret those words "according to their natural, plain, and ordinary sense." *Kvaerner*, 908 A.2d at 332–333 (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)). The Court "may consult the dictionary definition of a word to determine its ordinary usage." *Id.*

"Owner" is defined as "a person who owns something: one who has a legal or rightful claim to ownership" and "[s]omeone who has the right to possess, use, and convey something; a person in whom one or more interests are vested." *Owner*, MERRIAM-WEBSTER.COM DICTIONARY (July 11, 2026), https://www.merriam-webster.com/thesaurus/owner; OWNER, Black's Law Dictionary (12th ed. 2024). It is clear from the face of the amended complaint, and Hartford does not dispute, that Keffer is the owner of the ATS software. Keffer did not, as the owner, commit the wrongful entry or intrusion into the ATS software. A landlord is defined as "the owner of property (such as land, houses, or apartments) that is leased or rented to another" or "[s]omeone who rents a room, building, or piece of land to someone else." *Landlord*, MERRIAM-WEBSTER.COM DICTIONARY; Black's Law Dictionary. Both definitions clearly imply a rental of real property, but the ATS software is not real property, thus the term "landlord" is inapplicable in this context.

20

Finally, a lessor is defined as "one that transfers property (such as a house or a car) by a contract" or "[s]omeone who conveys real or personal property by lease." *Lessor*, MERRIAM-WEBSTER.COM DICTIONARY; Black's Law Dictionary. The Court finds that Keffer has failed to support its assertion that Weiss acted on behalf of Keffer – the owner of the premises and the ATS server – when he accessed ATS. Nor has Keffer alleged that Weiss is a lessor or landlord himself or that he acted on behalf of a lessor or landlord when committing the alleged invasion or wrongful entry. Thus, Keffer fails to allege that the Weiss Plaintiffs' claims could possibly trigger coverage for "personal and advertising injury," as it is clear that Weiss's conduct cannot satisfy the coverage term requirements.

The Court notes that even if Keffer were successful in alleging that Weiss's conduct qualified as a "personal and advertising injury," Hartford has cited an applicable exclusion, further precluding coverage under the terms of the Policy. Hartford argues that the Policy's Information Disclosure Exclusion bars coverage for "personal and advertising injury." (ECF No. 18, p. 24). Pennsylvania courts "have established a general rule that 'it is a necessary prerequisite … for the insured to show a claim [falls] within the coverage provided by the policy," but "when the insurer relies on a policy exclusion as a basis for its denial of coverage …, the insurer has asserted an affirmative defense, and accordingly, bears the burden of proving such defense." *McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 646 (Pa. Super. 2013) (internal citations omitted) (first quoting *Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1256 (Pa. Super. 2008); and then quoting *Spece v. Erie Ins. Grp.*, 850 A.2d 679, 682 (Pa. Super. 2004)).

Under the applicable BLCF, further amended by the BLCF Amendatory Endorsement, the Policy provides several exclusions. (ECF No. 29-1, pp. 60, 86). It plainly states that the BLCF does not apply to "Personal and Advertising Injury …[a]rising out of any access to or disclosure

21

of any person's or organization's confidential or personal information, including … health information or any other type of nonpublic information." (*Id.* at 86). Pennsylvania courts have established that "the phrase 'arising out of' – when used in the context of an insurance exclusion – [ ] mean[s] casually connected with, not proximately caused by." *Gen. Refractories Co. v. Fire St. Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) (quoting *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (1967)). Based on the allegations contained in the SAC, the Court agrees with Hartford that the exclusion bars coverage for personal and advertising injury.

Keffer's amended complaint asserts that Weiss's invasion and wrongful entry into the ATS system was due to his access to account holders' passwords and information, stored on ATS, which further allowed him to "mine users' information, images and videos." (ECF No. 29, ¶ 41). As Hartford points out, "[t]he plaintiffs in the Weiss Lawsuits expressly allege that [ ] Weiss wrongfully accessed confidential and personal information, including their passwords, personal information commonly used in passwords, and personal health information." (ECF No. 18, p. 25) (citing ECF Nos. 18-2–13).[10] Moreover, the Weiss Plaintiffs' SAC asserts that "[a]s a senior member of the University's coaching staff, Weiss had privileged access to the ATS databases" and that access allowed him to "view data belonging to student-athletes across all of the University athletic programs." (ECF No. 33-5, ¶¶ 266–267). The data contained in the ATS system includes "PII and PHI such as athletes' contact information, medical details like height, weight, blood type, and medical history" along with information relating to athletes' mental health information. (*Id.* ¶¶ 228–229).

---

[10] The exhibits attached as support for Hartford's motion to dismiss may properly be considered by the Court because they are documents "whose authenticity no party questions" that are "referred to in [Keffer's] complaint" and are "central to [Keffer's] claim." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

The Court finds that even if Keffer had otherwise successfully asserted that the Weiss Plaintiffs' allegations triggered "personal and advertising injury," Hartford met its burden of proving that the exclusion applies. As Hartford states, the information the Weiss Plaintiffs allege Weiss "wrongfully accessed" "fall squarely within the Policy's Information Disclosure Exclusion, which unambiguously bars coverage for injuries arising out of any access to personal information, including but not limited to health information."[11] (ECF No. 18, pp. 25–26).

The Court will grant Hartford's motion to dismiss Keffer's request for the Court's declaration that Hartford has a duty to defend or indemnify Keffer for "personal and advertising injury" under the terms of the Policy.

**B. Keffer fails to allege a breach of contract claim against Hartford.**

Keffer brings a breach of contract claim against Hartford at Count II, asserting that "Hartford has breached the [ ] Policy by denying coverage when bodily injury may exist which provides coverage" and "[b]y denying defense and indemnity to Keffer under the [ ] Policy, Hartford has breached its respective duties as imposed by the [ ] Policy." (ECF No. 29, ¶¶ 70, 80). However, because the Court has found that the Weiss Plaintiffs' underlying SAC does not trigger coverage under the "bodily injury" or "personal and advertising injury" provisions, Hartford has no duty to defend or indemnify Keffer under either provision. Accordingly, the breach of contract claim arising out of Hartford's denial of defense and indemnity fails. The Court will grant Hartford's motion to dismiss Keffer's breach of contract claim.

---

[11] Again, the Court finds that where an insurer does not have a duty to defend, it does not have a duty to indemnify the insured. Hartford thus does not have a duty to indemnify Keffer for the alleged personal and advertising injuries. *See Kvaerner*, 908 A.2d at 896 n.7.

## IV.    CONCLUSION

For the reasons set forth above, the Court will grant Hartford Casualty Insurance Company's Reasserted Motion to Dismiss Plaintiff's [First Amended] Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 30).   An Order of Court will follow.

Dated: 8/6/26

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE